SEVERIANO APONTE CORREA, querellante y apelado, *v.* POLICÍA DE PUERTO RICO, querellada, y POLICÍA FRANCISCO BÁEZ QUIÑONES, PLACA NÚM. 12471, querellado y apelante.

*Número:* AA-96-5          *Resuelto:* 5 de diciembre de 1996

*Jesús M. Jiménez*, abogado de la parte apelante; *Edda Serrano Blasini, Subprocuradora General*, y *Miriam Virola Santiago, Procuradora General Auxiliar*, abogadas de la parte apelada.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

Tenemos la ocasión para aclarar brevemente dos aspectos importantes del proceso apelativo relativo a las decisiones administrativas. El hecho de que, con alguna frecuencia, se nos presentan solicitudes que contienen errores sobre estos asuntos, nos mueve a expresarnos sobre ellas para conocimiento y advertencia de la profesión.

I

El 11 de agosto de 1989, Severiano Aponte Correa y su esposa Rosa Pérez Santos, Francisco Báez y su esposa Irma A. Pomales Pomales suscribieron un contrato de opción de compra de una casa propiedad de Aponte por el precio de $60,000. El 12 de octubre de 1989 las partes suscribieron una declaración jurada en la que se hacía constar que habían formalizado la compraventa de la casa aludida y que los compradores, Báez y su esposa, para adquirirla, habían solicitado un préstamo hipotecario a la Administración de los Sistemas de Retiro del Estado Libre Asociado. Acordaron las partes que, de existir alguna diferencia entre la cantidad que se les prestaría a los compradores y el precio de venta, éstos se obligaban a pagar dicha diferencia después de haber recibido la llave de la casa.

Posteriormente, el 12 de agosto de 1990, las referidas partes otorgaron la escritura de compraventa y los compradores asumieron la hipoteca que ya gravaba al inmueble en cuestión. Aunque en la escritura se hizo constar que Báez había entregado al vendedor $40,639.04, y que la parte compradora retenía $19,360.96 para pagar en su día la hipoteca que gravaba la propiedad, la realidad fue que el día que se firmó la escritura, el vendedor sólo recibió $25,470 y el comprador se comprometió a entregarle al vendedor la diferencia de $15,160.04 cuando se le entregara la llave de la residencia.

Luego del aludido trámite de venta, el vendedor Aponte le entregó la propiedad aludida a Báez, sin que éste le pagara la diferencia adeudada. Las posteriores gestiones de cobro de Aponte para que Báez le pagara lo adeudado fueron infructuosas. Por tal razón, Aponte y su esposa presentaron una acción de cobro de dinero ante el Tribunal Superior, Sala de Guayama, contra Báez y su esposa. En ese pleito se les anotó la rebeldía a los demandados por no

contestar la demanda. Posteriormente, el 20 de mayo de 1992, el tribunal dictó sentencia y declaró con lugar la demanda.(¹)

Como transcurrió más de un (1) año sin que los vendedores lograsen que Báez cumpliese con la sentencia dictada en su favor, y que satisfaciese la deuda pendiente, el 29 de octubre de 1993, Aponte presentó por ello una querella administrativa contra Báez, quien se desempeñaba como miembro de la Policía de Puerto Rico. Luego de realizar la investigación administrativa correspondiente, el Superintendente de la Policía (en adelante Superintendente) le notificó a Aponte el 14 de noviembre de 1994 que, luego de analizar la información obtenida de la investigación, se había procedido a la exoneración del querellado debido a que "no hay evidencia para tomar acción en contra de éste". Se le informó a Aponte que de no estar conforme con dicha determinación podía apelar la misma ante la Comisión de Investigación, Procesamiento y Apelación (en adelante C.I.P.A.) dentro del término de treinta (30) días.

El 12 de enero de 1995 Aponte apeló la decisión del Superintendente de exonerar al Policía Báez. Luego de los trámites procesales de rigor y de la celebración de vista, el 18 de octubre de 1995 la C.I.P.A. dictó su resolución en este caso. Determinó que la conducta de Báez constituía una apropiación ilegal mediante engaño, la cual no se podía tolerar de parte de un funcionario público como Báez porque afectaba adversamente la imagen del Cuerpo de la Policía. Concluyó, por ende, que Báez había incurrido en conducta violatoria del inciso 24 (graves)(²) y del inciso 5 (leves)(³) del Art. 14, Sec. 14.5 del Reglamento de Personal

---

(¹) Surge de la resolución de la Comisión de Investigación, Procesamiento y Apelación (en adelante C.I.P.A.) que a la fecha en que se celebró la vista ante sí aún no se había satisfecho la deuda.

(²) Inciso 24 — Apropiarse ilegalmente de bienes pertenecientes a otras personas o aquellos que le hayan sido confiados en el curso de sus funciones.

(³) Inciso 5 — Dejar de honrar las deudas y compromisos contraídos.

de la Policía de Puerto Rico, págs. 103 y 108, por lo que ordenó su expulsión del Cuerpo. La resolución se archivó el 10 de noviembre de 1995. Solicitada oportunamente la reconsideración de la resolución, ésta fue denegada el 7 de diciembre de 1995, y archivada en autos el 11 de diciembre de 1995.

El 10 de enero de 1996 Báez acudió ante nos mediante apelación administrativa[4] y alegó la comisión de los errores siguientes:

> 1. Erró la Honorable Comisión de Investigación, Procesamiento y Apelación (C.I.P.A.) al entrar a considerar en sus méritos una acción administrativa sin tener jurisdicción para ello.
> 2. Erró la Honorable Comisión de Investigación, Procesamiento y Apelación (C.I.P.A.) al concluir que el querellado incurrió en conducta en violación a las Reglas 24 y 5 del Reglamento de Personal de la Policía de Puerto Rico.

El 25 de abril de 1996 le dimos un término a la parte apelante para presentar su alegato, que cumplió el 21 de mayo de 1996. El Procurador General presentó el suyo el 20 de junio de 1996. Con el beneficio de ambas comparecencias, pasamos ahora a resolver.

## II

Procede, en primer lugar, que se atienda la alegación del peticionario (que ataca la jurisdicción de la C.I.P.A.) para dictar la resolución recurrida. Se alega, en esencia, dos (2) razones para sostener la falta de jurisdicción de la C.I.P.A.: (1) que el querellante no presentó moción de reconsideración ante el Superintendente antes de apelar a C.I.P.A., y (2) que el querellante hizo la presentación del recurso de apelación ante la C.I.P.A. fuera de término.

---

[4] A tenor con el anterior Art. 3.002(d) de la Ley de la Judicatura de Puerto Rico de 1994 (4 L.P.R.A. sec. 22i).

A. Se aduce, inicialmente, que la presentación que hizo el querellante de una moción de reconsideración ante el Superintendente, antes de acudir a la C.I.P.A., es de carácter jurisdiccional, no discrecional. La parte apelante alega que la Sec. 3.15 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2165), en adelante L.P.A.U., le impone la obligación, a la parte adversamente afectada por una decisión del Superintendente, de presentar una moción de reconsideración, previo a acudir ante la C.I.P.A. *El Procurador General de Puerto Rico, en su informe ante nos, se allanó a tal posición.* No tiene razón. Veamos.

A la fecha en que el Superintendente emitió su determinación en el caso de autos, la citada Sec. 3.15 de la L.P.A.U. imponía la obligación de solicitar la reconsideración como requisito jurisdiccional, sólo en los casos en que se solicita la *revisión judicial* de cualquier dictamen administrativo y no en los casos en que se trata de una apelación interagencial. La disposición aludida ordenaba claramente, en lo pertinente, que:

La moción de reconsideración será jurisdiccional para poder solicitar la *revisión judicial*. (Énfasis suplido.)[5]

_____

[5] El 1ro de mayo de 1996, mediante la Ley Núm. 247 de 25 de diciembre de 1995, entró en vigor una enmienda a la Sec. 3.15 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (en adelante L.P.A.U.), 3 L.P.R.A. sec. 2165. Ésta eliminó el requisito de presentación de la moción de reconsideración previo a una solicitud de revisión judicial.

A tales fines, el 25 de octubre de 1995 la Comisión de lo Jurídico del Senado de Puerto Rico emitió un informe en torno al Proyecto de la Cámara 1684, en el cual expresó lo siguiente:

"'El Artículo 4 enmienda la Sección 3.15 de la Ley de Procedimiento Administrativo Uniforme en lo referente a la moción de reconsideración ante la agencia. Se efectuaron varios cambios importantes, a saber:

"'1. se eliminó el requisito de que se presente una moción de reconsideración como paso previo obligatorio y antes de acudir al tribunal.

"'Adscribirle carácter jurisdiccional a la moción de reconsideración opera en perjuicio del acceso del Pueblo a los tribunales. Es un obstáculo, o un paso innecesario, previo a la revisión judicial. Es de suponer que la agencia sostendrá su dictamen, en la inmensa mayoría de los casos, por lo que la moción de reconsidera-

■ En vista de una expresión tan palmaria, no podemos añadirle al estatuto lo que éste no contenía. *Román v. Superintendente de la Policía*, 93 D.P.R. 685 (1966). En efecto, en otras ocasiones en que había estado ante nos algún asunto relativo a la referida Sec. 3.15 de la L.P.A.U. habíamos actuado bajo el supuesto de que la misma se refería a la reconsideración que debía presentarse ante un organismo administrativo antes de acudir en revisión al foro judicial. Véanse: *Pagán Ramos v. F.S.E.*, 129 D.P.R. 888 (1992); *Mar-mol Co., Inc. v. Adm. Servicios Gens.*, 126 D.P.R. 864 (1990). La reconsideración de carácter jurisdiccional que establecía la citada Sec. 3.15 era una modalidad de la doctrina de agotar remedios administrativos, que perseguía precisar la etapa adecuada en la cual una parte, que acudió inicialmente a un foro administrativo, podía recurrir a los tribunales para continuar allí con su acción litigiosa. Formaba parte, pues, del entramado procesal dirigido a evitar una intervención judicial innecesaria y a destiempo que pudiese interferir con el cauce y desenlace normal del proceso administrativo. Se le daba, así, a la propia agencia administrativa la oportunidad de rectificar sus posibles errores en etapas avanzadas del proceso antes del examen judicial. Véanse: *Delgado Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347 (1988); *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716 (1982). No se trataba, pues, de un requisito previo a la apelación interagencial como erróneamente alegan el peticionario y el Procurador General en sus escritos ante nos.

■ Recientemente, a fines de 1995, la Asamblea Legislativa eliminó la disposición de la citada Sec. 3.15 de la

ción es, por lo general, una pérdida de tiempo o una excusa para hacer más fácil la revisión judicial. Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, Editorial Forum, Colombia, 1993, Sección 8.10, a la página 471 y siguientes. Esto lesiona el propósito de la reforma judicial en que la justicia apelativa se encuentre disponible a todo tipo de caso.' "

L.P.A.U. que requería la reconsideración ante la agencia administrativa como requisito jurisdiccional para la revisión judicial. Lo hizo por entender que dicha medida era "una pérdida de tiempo".[6] Así, pues, hoy la reconsideración mandatoria, como norma general, no existe ni siquiera para la revisión judicial de una decisión administrativa. Tal reconsideración conserva el carácter jurisdiccional, sólo cuando expresamente lo dispone algún estatuto posterior a la referida enmienda de 1995 de la L.P.A.U., como en el caso de las determinaciones de la Comisión Industrial de Puerto Rico que, según la Ley Núm. 63 de 1ro de julio de 1996, sigue siendo mandatoria. 11 L.P.R.A. sec. 8.

Por otro lado, nada hay en la ley que crea la C.I.P.A. que dé base a la alegación del peticionario de que la parte querellante venía obligada a solicitar la reconsideración de la decisión del Superintendente antes de acudir en apelación ante la C.I.P.A. Dicha ley no dispone un mecanismo de reconsideración. Por el contrario, la ley de la C.I.P.A. establece taxativamente que el término para apelar ante dicho organismo comenzará a correr "a partir de la notificación de la determinación" del Superintendente. 1 L.P.R.A. sec. 172(2). De modo alguno puede inferirse de tal lenguaje una supuesta *obligación* de solicitar la reconsideración de la decisión del Superintendente como condición para poder apelar ante la C.I.P.A.

Finalmente, es menester resaltar que el propio Superintendente, en su Carta de 14 de noviembre de 1994 a Aponte, mediante la cual deniega su querella, le informó expresamente que si no estaba conforme con su determinación tenía derecho a apelar ante la C.I.P.A. en un término de treinta (30) días. Nada le advirtió sobre un supuesto requisito de solicitar reconsideración porque tampoco existe tal requisito en el Reglamento de Personal de la Po

---

[6] Informe de la Comisión de lo Jurídico del Senado de Puerto Rico sobre el P. de la C. 1684 de 25 de octubre de 1995.

licía de Puerto Rico. Véase Sec. 14.3(2)(b) de ese reglamento.

■ Resolvemos, pues, que no era mandatorio solicitar la reconsideración de la determinación del Superintendente como condición para apelar ante la C.I.P.A.([7])

B. No obstante lo antes expuesto, sí era necesario la presentación del recurso de apelación en cuestión, dentro del término de treinta (30) días, para que C.I.P.A. tuviese jurisdicción para atenderlo. En este caso es un hecho incontrovertible que la apelación fue presentada el 12 de enero de 1995. A esa fecha ya habían transcurrido cincuenta y ocho (58) días desde que el Superintendente notificó su determinación a Aponte el 14 de noviembre de 1994. En vista de que el recurso se presentó fuera del término dispuesto por ley, la decisión de la C.I.P.A. es nula por haber sido dictada sin jurisdicción.

■ Es norma establecida de este Foro que "los términos para apelar sentencias, sean penales o civiles ... son fijados por ley para conferir jurisdicción al tribunal apelativo. [Dichos términos] no puede[n] ser, por tanto, prorrogado[s] por el tribunal apelativo pues tal acción sería en exceso de la autoridad conferídale por ley". *Pueblo v. Miranda Colón*, 115 D.P.R. 511, 513 (1984). Reiteradamente hemos señalado que "[l]a apelación es un remedio que sólo existe cuando es concedido por estatuto o por al-

---

([7]) Nada de lo que resolvemos aquí altera la reiterada norma de que los organismos administrativos, igual que los foros judiciales, tienen facultad inherente para reajustar sus órdenes y resoluciones de acuerdo con lo que la justicia y la razón dicten. *Romero Santiago v. F.S.E.*, 125 D.P.R. 596 (1990); *J.R.T. v. Missy Mfg. Corp.*, 99 D.P.R. 805 (1971); *Martínez v. Tribunal Superior*, 83 D.P.R. 717 (1961). Por ello, si la parte afectada por una decisión administrativa solicita su reconsideración oportunamente, la agencia puede acogerla razonablemente, siempre que no haya perdido jurisdicción, aunque no se disponga por ley tal reconsideración. *Pueblo v. Mojica Cruz*, 115 D.P.R. 569, 574–575 (1984); *El Mundo, Inc. v. Tribunal Superior*, 92 D.P.R. 791, 800–802 (1965); *Torres Torres v. Tribunal Superior*, 101 D.P.R. 277, 279 (1973); *Suárez v. Flamingo Homes, Inc.*, 102 D.P.R. 664, 668 (1974). Nada de lo anterior está ante nos en este caso. Lo único que consideramos aquí es si en las circunstancias de autos existía una *obligación* de solicitar la reconsideración antes de acudir en apelación ante la C.I.P.A.

gún precepto constitucional". *Quilinchini v. Comisión Servicio Civil*, 63 D.P.R. 681, 682 (1994). Véase *Concepción v. Junta de Contabilidad*, 80 D.P.R. 194 (1958).

Por razones similares, los términos para la apelación administrativa son de carácter mandatorio y las agencias concernidas no tienen autoridad para prorrogarlos por su cuenta. Al igual que en el foro judicial, en el ámbito administrativo no existe discreción para asumir jurisdicción donde no la hay. *Martínez v. Junta de Planificación*, 109 D.P.R. 839 (1980). Lo que en *Martínez*, supra, resolvimos específicamente respecto a solicitar reconsideración ante la Junta de Planificación, aplica también a las apelaciones ante organismos administrativos como la C.I.P.A. Cuando el estatuto pertinente perfila los términos para apelar en lenguaje taxativo, dichos términos deben observarse sin excepción por su carácter jurisdiccional.

La ley que crea la C.I.P.A. utiliza un texto claro y preciso para establecer lo relativo al término de las apelaciones ante ese organismo, al disponer que:

> Tanto el funcionario querellado, como el ciudadano perjudicado que hubiere radicado una querella formal ante la autoridad facultada para sancionar, tendrán un término de treinta (30) días para apelar ante la Comisión .... 1 L.P.R.A. sec. 172.

Habiéndose presentado la apelación de Aponte ante la C.I.P.A., transcurrido ya el término que la ley fija taxativamente, ésta carecía de jurisdicción para considerar y revocar el dictamen del Superintendente como lo hizo en este caso.

En vista del resultado a que llegamos, se hace innecesaria la discusión del segundo error.

Por los fundamentos expuestos, *se dictará sentencia y se revocará la Resolución de la C.I.P.A. de 18 de octubre de 1995.*

El Juez Asociado Señor Rebollo López concurrió sin opinión escrita.