*733 TEXTO COMPLETO DE LA SENTENCIA
El Sr. José Francisco González, Godwin & González Specialty Equipment, Inc. (Godwin), Equipos Sansón, Inc., González Metal Trading, et al, solicitaron la revocación de la sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan, que declaró con lugar la demanda de desahucio presentada en su contra por el Municipio de San Juan (el Municipio). Señalan que erró el tribunal al concluir que el contrato de arrendamiento había expirado, contrario a la prueba desfilada en el juicio, y al no permitir prueba extrínseca para interpretar la cláusula de renovación y los términos de vigencia del contrato.
Examinados los planteamientos de las partes, a la luz del expediente, de la exposición narrativa de la prueba y del derecho aplicable, procede confirmar la sentencia.
I
El 5 de mayo de 1988, el Sr. José Francisco González Rodríguez suscribió un contrato con el Municipio para el arrendamiento de una parcela en la calle San Agustín de Puerta de Tierra. La vigencia inicial del contrato se pactó, según la cláusula cuarta, para cinco (5) años, prorrogables por períodos sucesivos de cinco (5) años a voluntad de las partes hasta un máximo de veinte (20) años. Inicialmente, la renta mensual se pactó en $350.00 mensuales. El primer período de prórroga contempló aumento mensual en la renta de $350.00 a $500.00 y aumentos sucesivos en los próximos períodos. Se dispuso que el arrendatario debía solicitar la renovación con sesenta (60) días de antelación a la fecha de la terminación de cada período. Apéndice del recurso, pág. 18.
El señor González cedió el contrato de arrendamiento a Godwin, el 18 de febrero de 1992. El 4 de julio de 1998, el Director de Empresas Municipales del Municipio de San Juan, Sr. Ramón Arce, notificó mediante carta al señor González que el contrato venció el 30 de abril de 1993, y que desde esa fecha ocupaba la propiedad de mes a mes. Expresó que el Municipio tenía interés en utilizar la propiedad en un proyecto de bienestar público y solicitó el desalojo a partir del 30 de agosto de 1998. Apéndice del recurso, pág. 26. Los apelantes continuaron ocupando el edificio y pagando los cánones de renta mensuales hasta agosto de 1998. A partir de ese mes, el Municipio no aceptó pagos por concepto de renta.
El Municipio presentó demanda de desahucio sumario contra el señor González y otros. Alegó que luego de la renovación para la primera prórroga, el arrendatario no solicitó la renovación del contrato con sesenta (60) días de antelación. Planteó que no existía entre las partes acuerdo alguno que expresara la voluntad de renovar el contrato de arrendamiento por período adicional y solicitó se ordenara el desalojo de la propiedad. El demandado alegó en su contestación que el contrato había sido renovado.
Previa celebración de vista en la que recibió prueba documental y testifical, el tribunal dictó sentencia ordenando el desalojo. Encontró como hechos probados que medió renovación para el primer período, y que ante la expiración del contrato en abril de 1998, el arrendatario continuó ocupando la propiedad de mes a mes, pagando el canon de $500.00 correspondiente al primer período de prórroga. Determinó que al no existir voluntad de ambas partes para una renovación, como lo requería el contrato, éste venció al 30 de abril de 1998 y a partir de ese momento operó una relación de tácita reconducción entre las partes que concluyó el 30 de agosto de 1998. Sostuvo la validez del contrato y el derecho del Municipio a recuperar la propiedad para los fines públicos aducidos.
Inconforme con la sentencia, el señor González y otros presentaron este recurso de apelación, en solicitud de su revocación y de que se reconozca como válido y vigente el contrato de arrendamiento suscrito entre las *734 partes hasta abril del 2003.
II
Los planteamientos de los apelantes están relacionados con la apreciación de la prueba, y se refieren, en esencia, a la determinación del tribunal respecto a que el contrato de arrendamiento había expirado por no haberse renovado conforme a derecho y que la aceptación de los pagos de arrendamiento no constituyó un consentimiento implícito a la renovación del contrato.
Al examinar las alegaciones en tomo a la prueba, aplicamos la reiterada norma referente a la revisión de la apreciación de la prueba y de las determinaciones de hechos del tribunal de instancia. En ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, la apreciación de la prueba hecha por el tribunal de instancia merece deferencia por parte del tribunal apelativo y no debe ser descartada, modificada arbitrariamente, ni sustituida por el criterio del tribunal revisor. Mercado Rivera v. P.U.C.P.R, 143 D.P.R. _ (1997), 97 J.T.S. 106, pág. 1267; Monitor v. Soc. de Gananciales, 138 D.P.R. 600, 610 (1995); Sánchez v. López Jiménez, 116 D.P.R. 172 (1985). El fundamento de esta deferencia se basa en que el juez de instancia tuvo la oportunidad de observar la prueba testifical y, por lo tanto, se encuentra en mejor situación que el tribunal apelativo para aquilatarla.
Sólo cuando las determinaciones de hechos se basan en prueba documental, se reconoce que el tribunal apelativo está en idéntica posición que el tribunal de instancia respecto al examen de la prueba. Díaz García v. Aponte Aponte, 125 D.P.R. 1, 13 (1989); Abudo v. Autoridad, 105 D.P.R. 728 (1977).
Bajo esa normativa y las disposiciones legales aplicables, evaluemos, en primer término, la cláusula contractual en controversia, para luego considerar la prueba testifical, conforme la exposición narrativa estipulada.
in
Sabido es que la aceptación de una oferta es el procedimiento normal para el perfeccionamiento de un contrato. En esa forma se manifiesta el consentimiento de las partes, requisito esencial para la existencia del contrato. Así lo preceptúa el artículo 1214 del Código Civil cuando dispone que el consentimiento se manifiesta por el concurso de la oferta y de la aceptación sobre la cosa y la causa que han de constituir el contrato. 31 L.P. R.A. see. 3401. Es decir, el vínculo obligacional entre las partes surge del acuerdo de voluntades que se manifiesta con la oferta y la aceptación.
En el presente caso, las partes pactaron el arrendamiento de un local perteneciente al Municipio, y acordaron en la cláusula cuarta lo siguiente:

“CUARTA: Este contrato tendrá una vigencia inicial de cinco (5) años a partir del 10 de mayo de 1988, siendo prorrogable dicha vigencia por períodos sucesivos de cinco (5) años a voluntad de las partes hasta un máximo de veinte (20) años con un canon de QUINIENTOS DOLARES ($500) mensuales durante la primera prórroga, SEISCIENTOS DOLARES ($600) DOLARES durante la segunda prórroga y SETECIENTOS CINCUENTA DOLARES ($750) durante la tercera prórroga sin necesidad de subasta pública siempre que el ARRENDATARIO solicite tal renovación con sesenta (60) días de antelación a la fecha de la terminación de cada período. ”

Según se establece en la cláusula transcrita, la prórroga del contrato requería la voluntad de las partes. Para esto era necesario que el arrendatario solicitara la renovación con sesenta (60) días de anticipación al vencimiento del período y que el Municipio expresara su anuencia a la prórroga.
Ahora bien, cuando las partes no acuerdan prorrogar un contrato de arrendamiento, o si no hay término fijo, aplican las disposiciones del Código Civil. Este dispone que si al terminar el contrato, el arrendatario *735 permanece quince (15) días disfrutando de la cosa arrendada con aquiescencia del arrendador y pagando el canon, se sobreentiende que hay tácita reconducción. Art. 1456, 31 L.P.R.A. sec. 4063. Si no se hubiese fijado plazo al arrendamiento, se entiende hecho por años cuando se ha fijado un alquiler anual, por meses cuando es mensual, por días cuando es diario. En todo caso, cesa el arrendamiento, sin necesidad de requerimiento especial cumplido el término. Art. 1455, 31 L.P.R.A. sec. 4062.
Una de las causas por las cuales el arrendador puede desahuciar judicialmente al arrendatario, es por haber expirado el término de duración del contrato. Art. 1459 del Código Civil, 31 L.P.R.A. see. 4066.
El examen de la prueba testifical revela las circunstancias que mediaron y que consideró el tribunal bajo las disposiciones contractuales y legales.
Durante el juicio, el Municipio presentó como testigo a la Sra. Marilyn Irene Rodríguez, Supervisora del Area de Contabilidad y Cobro del Programa de Empresas Municipales del Departamento de Desarrollo Económico y Turismo del Municipio. Esta declaró, en síntesis, que en 1993 se renovó, a voluntad de las partes, el contrato de arrendamiento por los próximos (5) años, que con esta renovación, el contrato era vencedero al 30 de abril de 1998, y que una vez concluyó este período, el Municipio decidió rescatar la propiedad. Añadió que no le constaba que el arrendatario hubiese ejercido su voluntad de renovar el contrato antes o después de su vencimiento, y que de haberlo hecho, ella se hubiera enterado, ya que una carta se hubiera recibido en su oficina. Señaló que se le siguió cobrando al arrendatario el canon de arrendamiento de $500.00 mes a mes hasta la fecha efectiva del desalojo, el 30 de agosto de 1998. Informó que no se aceptaron cheques enviados por el arrendatario, en pago del aumento de $100.00 para los meses de mayo, junio, julio y agosto, ya que como no se renovó el contrato, esto no procedía. Durante el contrainterrogatorio, admitió que en febrero de 1998 el Municipio recibió, de parte de los apelantes, el cheque núm. 3942 por la suma de $500.00, que el mismo aparece cobrado y que de haber venido acompañado de un documento se hubiese canalizado en el Programa. Exposición narrativa (E.N.P.), págs. 1-5.
La otra testigo del Municipio, la Sra. Ivelisse Gorbea, no tuvo que declarar, puesto que la parte demandada estipuló su testimonio, a los efectos de que la razón por la cual el Municipio deseaba recobrar la posesión del inmueble era para realizar una obra de interés público. E.N.P., pág. 5.
Como testigo a su favor, la parte demandada intentó se permitiera la declaración del Sr. Rafael A. Curbelo Ruiz, ex funcionario del Municipio, que fue parte otorgante del contrato de arrendamiento. Su testimonio iba dirigido a la interpretación de las cláusulas cuarta y quinta del contrato, o sea la cláusula de vigencia y prórrogas y la de terminación. Ante la objeción del Municipio y argumentación de las partes sobre la Regla 69 de Evidencia, la jurisprudencia sobre prueba extrínseca y el artículo 1233 del Código Civil, el tribunal no permitió el testimonio. Determinó que ambas cláusulas eran clarísimas y que además estaban ante un procedimiento de desahucio sumario. E.N.P., pág. 6.
Como último testigo, declaró el apelante, señor González. En términos generales, declaró que se dedica a negocios industriales desde los últimos veinte años, que opera una fábrica para construir plataformas y equipo para camiones cuyo principal cliente es el gobierno de Puerto Rico. Las oficinas principales de su negocio están ubicadas en la propiedad arrendada al municipio de San Juan desde 1988. Señaló que antes de esa fecha operaba en la vía del tren, y una vez el Municipio necesitó aquel local para hacer el carril exclusivo, se negoció para que el Municipio le buscara otro local. El único disponible era el que tiene arrendado. Declaró que negoció haciéndole saber al Municipio que tenía que invertir una cantidad de dinero, por lo que el término del contrato tenía que ser suficiente para recuperar la inversión.
En relación a la cláusula cuarta del contrato, referente a su renovación, el señor González testificó que cuando terminó el primer período, le indicó verbalmente al Sr. Pedro J. Martínez, entonces Director de Empresas Municipales, su intención de continuar con el contrato. Sobre el segundo período, testificó que en el *736 mes de febrero de 1998, junto con uno de los cheques, envió una carta notificando su intención de continuar con el contrato. Admitió que nunca recibió respuesta a la referida carta. Indicó que la primera renovación se hizo verbal, pero la segunda se hizo por escrito para que no hubiera duda. Declaró que todos los cheques posteriores fueron cobrados por el Municipio. Señaló que al momento de ocupar la propiedad en controversia tuvo que invertir más de $250,000.00. En relación a los cánones de renta, declaró que continuó pagando los $500.00 mensuales después de su carta de 6 de febrero, aunque el contrato decía que el canon de la segunda prórroga era de $600.00. Sobre este aspecto, dijo que los cheques de pago vienen de North Carolina y la persona de allá no se había percatado de esa condición. En el mes de septiembre es cuando se envía un pago de $600.00 y este cheque no fue aceptado por el Municipio. E.N.P., págs. 8-10.
Durante el contrainterrogatorio, el señor González admitió que en febrero de 1998 no hizo gestión verbal con nadie en Empresas Municipales para renovar el contrato. Admitió que en las cartas de 12 de agosto, y de 12 de septiembre de 1998, redactadas por sus abogados en respuesta a la cancelación del contrato, no se hace referencia alguna a la carta (de febrero de 1998) en solicitud de renovación. Señaló que la carta de solicitud de renovación no indicaba que fue enviada por correo certificado, ni mensajero, ni tenía recibo del Municipio. E.N. P., págs. 10-12.
La evaluación de la prueba documental y testifical sustenta las determinaciones de hechos de la sentencia. El contrato dispone claramente que se prorrogaría a voluntad de las partes. La prueba revela que la primera prórroga fue gestionada personalmente por el señor González en comunicación verbal con el funcionario del Municipio que firmó el contrato. Conforme esa prórroga, el arrendatario pagó el canon de $500.00 dispuesto en el contrato. Por el contrario, no se realizaron gestiones para la renovación de la segunda prórroga con persona alguna del Municipio. Luego de expirado el término de la primera prórroga, el arrendatario continuó ocupando el local pagando el canon de $500.00 de renta mensual y no el correspondiente al segundo período. El arrendatario no explicó porqué no hizo gestión con el Municipio, luego del envío de la alegada comunicación de 6 de febrero de 1998. Esta no fue contestada. Tampoco explicó porqué no se hizo referencia a dicha comunicación en las comunicaciones posteriores dirigidas al Municipio en las que alegó el contrato se había renovado. La continuación del pago de renta, sin que mediara acuerdo entre las parte, fue de mes a mes bajo la tácita reconducción. En fin, las alegaciones del arrendatario sobre la renovación del contrato por un segundo período no encuentra apoyo en éste, en el derecho, ni en la prueba.
IV
El planteamiento de error imputado al tribunal de no admitir prueba extrínseca para la interpretación de la cláusula de renovación del contrato, es improcedente.
El artículo 1233 del Código Civil, 31 L.P.R.A. see. 3471, dispone que si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas.
Sobre la pmeba del contenido de un escrito, la Regla 69 de Evidencia, 32 L.P.R.A. Ap. IV, dispone:

“Regla 69. Regla de la mejor evidencia y de la evidencia extrínseca.

(A) A menos que un estatuto o estas reglas dispongan otra cosa, para probar el contenido de un escrito, grabación o fotografía, se requiere la presentación del escrito, fotografía o grabación original.

(B) Cuando en un convenio oral o escrito, ya sea público o privado, se hayan incluido todos los términos y condiciones que constituyen la verdadera y última intención de las partes, se considerará que éste es uno integrado, por lo que no cabrá entre los convinientes o sus sucesores en interés, evidencia extrínseca al contenido del mismo, excepto en los siguientes casos:

(1) Cuando una equivocación o imperfección en el convenio sea alegada en el litigio;

*737
(2) Cuando la validez del convenio constituye el hecho controvertido. ”

Esta regla no excluye otra evidencia de circunstancias bajo las cuales fuere hecho el convenio, o con las cuales se relacionare, como lo son la situación del objeto a que se contrayere, o la de las partes, o para probar ilegalidad o fraude.
Así, pues, cuando existe un convenio, ya sea oral o escrito, que disponga los términos y condiciones pactados, no procede la presentación de prueba extrínseca para probar modificaciones al mismo, salvo que se haya alegado una equivocación o imperfección o que esté en controversia su validez. La aplicación de esa norma tiene como premisa que un convenio oral o escrito sea integrado; es decir, incluya todos los términos y condiciones que constituyen la verdadera y última intención de las partes. Hernández Torres v. Padilla Morales, 142 D.P.R. 79 (1997); San Juan Credit, Inc. v. Ramírez Carrasquillo, 113 D.P.R. 181, 190 (1982); Ernesto Chiesa, Práctica Procesal Puertorriqueña, Vol. I, Evidencia, pág. 474, Publicaciones J.T.S.
En el caso de autos, se trata de un contrato válido, integrado, en donde no se ha alegado, ni establecido, equivocación o error respecto a la cláusula de prórroga. La cláusula en relación a la voluntad requerida de las partes para la renovación, es clara, refleja la intención y no admite prueba de interpretación. Según la prueba, las partes actuaron previamente, conforme sus disposiciones. El tribunal no erró al determinar que era inadmisible la prueba extrínseca para interpretar los términos y condiciones del contrato.
y
En conclusión, no erró el tribunal de instancia en su apreciación de la prueba, ni en la aplicación del derecho, al decretar el desahucio por haber expirado el contrato de arrendamiento pactado entre las partes. Por tanto, se confirma la sentencia apelada.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General