Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| JOSELITO CRUZ CAMPOS<br><br>RECURRENTE<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>RECURRIDO | KLRA202400520 | *Revisión Judicial* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm. B-601-24<br><br>Sobre: Receta de Insulina |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 8 de noviembre de 2024.

### I.

El caso ante nos tiene su origen con la radicación de un escrito, por derecho propio y de forma pauperis, de forma oportuna por el señor Joselito Cruz Campos (parte recurrente). Dicha parte presenta el recurso estando bajo la custodia del Departamento de Correccion y rehabilitación (DCR).

Solicita la revisión de una determinación, en reconsideración, de la División de Remedios Administrativos del DCR, emitida el 15 de agosto de 2024 y recibida por él, el 16 de agosto de 2024, en la que se determinó "confirmar y modificar la respuesta recibida por parte de la Lcda. Nitza M. Meléndez Salgado, Regente de Farmacia Institución Correccional Bayamón 501."[1] La misma está relacionada a la necesidad de salud del recurrente de que se le provea la insulina Trulicity, según recetado por el facultativo médico, Dr. Gabriel Irizarry Villafañe.

---

[1] Anejo del Recurso de Revisión Judicial.

El 1 de octubre de 2024 emitimos *Resolución* en la que concedimos a la parte recurrida hasta el 16 de octubre de 2024 para presentar su alegato en oposición. Además, autorizamos al recurrente a litigar in forma pauperis.

El 16 de octubre compareció el DCR y solicitó prórroga para cumplir con lo ordenado.

El 17 de octubre de 2024 le concedimos término final hasta el 25 de octubre de 2024.

No obstante lo ordenado, el 25 de octubre de 2024 el DCR radicó *Moción en solicitud de término,* solicitando una prórroga de tres (3) días para presentar su *oposición.*

El 28 de octubre de 2024, emitimos una *Resolución* concediendo la prórroga solicitada por el DCR.

El 31 de octubre de 2024, el DCR presentó *Escrito en cumplimiento de Resolución.* En el mismo solicitó que se confirme la determinación recurrida.

En aras de resolver el asunto pendiente pormenorizaremos el trámite procesal administrativo del caso.

**II.**

El caso de marras tiene su génesis el 13 de mayo de 2024 cuando la División de Remedios Administrativos del DCR emitió una *Respuesta del Área Concernida,* en la solicitud de remedios, número B-601-24 interpuesta por el recurrente, que se encontraba ingresado en la institución Bayamón 501, módulo de vivienda 1-A.

En la misma resolvió que el recurrente tenía una receta activa de insulina hasta el 4 de marzo de 2024 y que en marzo no recibió receta externa, ni de su facultad médica para renovar o re-evaluar su terapia de insulina. Reconoció además, que a dicha fecha tenía una receta del Dr. Oferral para Humalog (10 unidades s/c a.m y

p.m) y Lantuss (40 unidades s/c en a.m y 60 unidades s/c en p.m). La misma estaba activa hasta el 8 de agosto de 2024.[2]

Dicho documento fue recibido por el recurrente el 12 de junio de 2024.

Al no estar conforme con la determinación de la agencia, presentó una *Solicitud de reconsideración.*

En la misma argumentó que en su cita con el endocrinólogo, Dr. Irizarry Villafañe, el 8 de marzo de 2024, se le recetó la insulina Lantuss, para combinarla con, la Trulicity, por lo que resulta imposible que no tuvieran la receta médica pendiente. Recalcó, además, que se está exponiendo su vida a complicaciones de salud y sugirió que se investigue bien lo resuelto. Acompañó copia de la orden médica, así como la cita con el endocrinólogo y manifestó que dicho asunto, a pesar de ser confidencial, se veía coaccionado a divulgar sin quererlo, para que se conozca la verdad.[3]

La división de Remedios Administrativos del DCR emitió una *Respuesta a Reconsideración al Miembro de la Población Correccional* el 15 de julio de 2024, entregada al recurrente el 6 de agosto de 2024. En la misma notificó que acogía la petición de reconsideración y se estaría emitiendo la correspondiente *Resolución en Reconsideración.*

El 15 de agosto de 2024, el DCR emitió *Resolución en Reconsideración* entregada al recurrente el 16 de agosto de 2024.[4]

En la misma formuló las siguientes determinaciones de hechos:

1. El recurrente presentó Solicitud de Remedios Administrativos el 26 de abril de 2024 ante el Evaluador de Remedios Administrativos, Maribel García Charriez de la Oficina de Bayamón. En su escrito expone que luego de una visita al endocrinólogo le receto Trulicity, pero luego de ser evaluado en el Centro Médico Correccional no se la suministraron.

---

[2] Íd.
[3] Íd.
[4] Por voz de Damaris Robles Domínguez, Coordinadora Regional de la División de Remedios Administrativos, Íd.

2. El 26 de abril de 2024 se hizo Notificación dirigida al Dr. Marcos Devarie, Director Médico, Complejo correccional de Bayamón.
3. El 21 de mayo de 2024 se recibió respuesta por parte de la Lcda. Nitza M. Meléndez Salgado, Regente de Farmacia, Institución Correccional Bayamón 501.
4. El 12 de junio de 2024 se hace la entrega al recurrente del Recibo de Respuesta.
5. El 24 de junio de 2024, el recurrente inconforme con la respuesta emitida, presentó Solicitud de Reconsideración ante el Coordinador Regional de Remedios Administrativos. En síntesis, arguye que no está de acuerdo con la respuesta recibida.
6. Se acoge la petición de Reconsideración el 15 de julio de 2024.

El DCR determinó confirmar y modificar la respuesta recibida por parte de la Lcda. Nitza M. Meléndez Salgado, Regente de Farmacia, Instituto Correccional Bayamón 501.

La *Resolución de Reconsideración* fue entregada al recurrente el 16 de agosto de 2024.

En desacuerdo, el recurrente presentó, oportunamente, el recurso de *Revisión Judicial.*

En síntesis, el recurrente expuso que el DCR ha incumplido con la entrega del medicamento Trulicity, a pesar de existir una receta firmada por el Dr. Irizarry. En esa línea, arguyó que ha agotado todos los remedios administrativos para que el DCR cumpliese con la distribución de los medicamentos, conforme a la receta médica. Por último, solicitó que, ordenemos a la compañía Physician Correctional a cumplir con los servicios de salud requeridos y con la entrega de los medicamentos. De lo contrario, de no recibir estos medicamentos, este pudiera sufrir derrames cerebrales e infartos en el corazón al haber sido operado de corazón abierto y tener un estado de salud precario.

Tras varias prórrogas concedidas, el 31 de octubre de 2024, el DCR presentó *Escrito en cumplimiento de Resolución.* En resumen, arguyó que, este ha cumplido con la entrega de medicamentos del señor Cruz Campos. En adición, el DCR alegó que, ha cumplido con su deber en atender el reclamo del recurrente. Asimismo, el

recurrido certificó que, posterior a la presentación del presente recurso, se le estaba distribuyendo al recurrente los medicamentos recetados. Consecuentemente, el DCR, alegó que, ha sido diligente en la entrega de los medicamentos y su respuesta no ha sido irrazonable.

**III.**

**A.**

Un caso no es justiciable cuando las partes carecen tener legitimación activa, no es un asunto académico, carece de madurez o cuando se trata de una cuestión política. *Noriega* **v.** *Hernández Colón,* 135 DPR 406, 421-422 (1994). Ahora bien, un caso es académico si los hechos o el derecho han variado de tal forma que ya no existe controversia entre las partes adversas. *PNP* **v.** *Carrasquillo*, 166 DPR 70, 76 (2005). Un caso no debe desestimarse si la controversia es susceptible de repetirse entre las mismas partes. *PNP* **v.** *Carrasquillo*, supra, pág. 77. Sin embargo, el Tribunal Supremo ha establecido cuatro (4) excepciones para entrar en los méritos de un caso académico, estos son: (1) cuando se presenta una controversia recurrente y capaz de evadir la revisión judicial, (2) cuando la situación de hechos ha sido modificada por el demandado pero no tiene visos de permanencia, (3) cuando la controversia se ha tornado académica para el representante de una clase pero no para otros miembros de la clase, y (4) cuando persisten consecuencias colaterales que no se han tornado académicas. *PNP* **v.** *Carrasquillo*, supra, pág. 77. En cuanto a la excepción de recurrencia se permite entrar en los méritos de una controversia académica si cumple con los siguientes criterios rectores: (1) la probabilidad de recurrencia; (2) la identidad de las partes involucradas en el posible pleito futuro, y (3) la probabilidad de que la controversia evada la revisión judicial. *Moreno* **v.** *UPR II*, 178 DPR 969, 974 (2010). Cuando un caso se torna académico, el tribunal

revisor tiene el deber de no tan solo revisar el recurso, si no también dejar sin efecto el dictamen revisado y devolver el caso con instrucciones de que se desestime. **Moreno v. UPR II**, supra, pág. 975.

**B.**

La sección 3.5 de la Ley de Procedimiento Administrativo Uniforme (LPAU), Ley Núm. 38 de 2017, según enmendada, 3 LPRA sec. 9655, establece que, la parte adversamente afectada por una resolución u orden parcial o final podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración de la resolución u orden. La agencia dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Íd. 3 LPRA sec. 9655. Si se tomare alguna determinación en su consideración, el término para solicitar revisión empezará a contarse desde la fecha en que se archive en autos una copia de la notificación de la resolución de la agencia resolviendo definitivamente la moción de reconsideración. Íd. 3 LPRA sec. 9655. Tal resolución deberá ser emitida y archivada en autos dentro de los noventa (90) días siguientes a la radicación de la moción de reconsideración. Íd. 3 LPRA sec. 9655. La *Reconsideración* es un requisito previo para poder interponer el recurso de *Revisión Judicial*. **Aponte v. Policía de Puerto Rico**, 142 DPR 75, 73 (1996).

En otros términos, la *Revisión Judicial* es aplicable a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias o funcionarios administrativos que serán revisadas por el Tribunal de Apelaciones. Íd. 3 LPRA sec. 9671. La *Revisión Judicial* de determinaciones administrativas responde principalmente a delimitar la discreción de las agencias y velar que ejerzan sus funciones conforme a la ley. **Mun. de San Juan v. J.C.A.**, 149 DPR 263, 279 (1999). La intervención judicial se rige por

los parámetros establecidos en la LPAU. ***Edward Simpson v. Consejo de Titulares y Junta de Directores del Condominio Coral Beach***, 2024 TSPR 64. Asimismo, la sección 4.2 de la LPAU establece que,

> una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.

Íd. 3 LPRA sec. 9672.

La LPAU dispone que una parte adversamente afectada por una orden o resolución de una agencia puede acudir en *Revisión Judicial* al tribunal siempre y cuando haya agotado los remedios administrativos. ***Edward Simpson v. Consejo de Titulares y Junta de Directores del Condominio Coral Beach***, supra, pág. 64. A su vez, la sección 4.5 de la LPAU dispone que, las determinaciones de hechos de las decisiones de las agencias se mantendrán por el tribunal de basarse en evidencia sustancial que surja del expediente administrativo. Íd. 3 LPRA sec. 9675. Es menester señalar que, las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. Íd. 3 LPRA sec. 9675. Los organismos administrativos merecen la mayor deferencia posible de los tribunales. ***Otero v. Toyota***, 163 DPR 716, 727 (2005). Tal deferencia se apoya en que las agencias administrativas tienen conocimiento experto y la experiencia especializada de los asuntos que le son encomendados. ***Otero v. Toyota***, supra, pág. 728. Al ejercer la función revisora, el tribunal está obligado a considerar la especialización y experiencia de la agencia sobre las cuestiones que tuvo ante sí. ***Rebollo v. Yiyi Motors***, 161 DPR 69, 78 (2004). Por otro lado, las determinaciones de derecho, el tribunal tiene amplia

autonomía para revisarlas en todos sus aspectos. ***Rebollo v. Yiyi Motors***, supra, pág. 77.

## C.

La ley orgánica del DCR, titulada Plan de Reorganización del Departamento de Corrección y Rehabilitación, Ley Núm. 2-2011, según enmendada, 3 LPRA, Ap. XVIII, Art. 5, dispone las facultades del DCR, en particular:

> d) incorporar y ampliar los programas de salud correccional y salud mental para hacerlos disponibles a toda la clientela;

Del mismo modo, el Artículo 7 de la Ley Núm. 2-2011, 3 LPRA, Ap. XVIII, Art. 7, inciso (aa) dispone que, el Secretario o Secretaria del Departamento de Corrección y Rehabilitación tiene la facultad de, adoptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios.

Sobre este particular, la División de Remedios Administrativos del DCR fue creada con el propósito de ser un organismo administrativo, cuyo objetivo es que los confinados puedan presentar una "solicitud de remedio" en su lugar de origen; excepto que medie justa causa para no haberla radicado en su lugar de origen, tales como: actos e incidentes que afecten personalmente al confinado en su bienestar físico, mental, seguridad personal o en su plan institucional, minimizar las diferencias entre los confinados y el personal, para evitar o reducir la radicación de pleitos en los tribunales, plantear asuntos de confinamientos al DCR, reducir tensiones y agresiones físicas y verbales que puedan resultar en reclamos no atendidos, recopilar información relacionada a los reclamos de los confinados que permitan evaluar éste y otros

programas y facilitar el proceso de rehabilitación del confinado. Reglamento para Atender Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional, Reglamento Núm. 8583, Departamento de Corrección y Rehabilitación, 26 de septiembre de 2014, pág. 2. Además, ostenta jurisdicción para atender los: "actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o en su plan institucional." Reglamento de Corrección y Rehabilitación, supra. Regla VI(a).

Amerita mencionar que el Reglamento de Corrección y Rehabilitación, supra, Regla XII, expresa el procedimiento que debe realizar el confinado para poder radicar una solicitud de remedio administrativo. Ahora bien, si la solicitud versa sobre remedios médicos, estas se tramitan al director médico y al superintendente de la institución en la cual se encuentre el confinado. Reglamento de Corrección y Rehabilitación, supra, Regla XII.

Asimismo, el procedimiento a seguir en la discusión de casos médicos es que,

> a. Una vez recibida la solicitud de remedio, el evaluador, no más tarde de dos (2) días laborables, visitará y se reunirá con el Coordinador de Calidad de "Correctional Health Services, Corp." para discutir el planteamiento del miembro de la población correccional El evaluador preparará una certificación de discusión de caso y continuará con el procedimiento establecido en el Reglamento,

> b. De no poder reunirse con el Coordinador de Calidad de "Correctional Health Services, Corp.", el evaluador preparará una certificación de discusión de caso donde se establezca por qué no se logró efectuar la discusión del caso y se procederá con el procedimiento en el Reglamento.

> Reglamento de Corrección y Rehabilitación, supra, Regla XII.

Una vez la División de Solicitudes de Remedios Administrativos emita una respuesta, el confinado tendrá veinte (20) días para solicitar una *Reconsideración.* Reglamento de Corrección y Rehabilitación, supra, Regla XIV. La Regla XIV decreta que el DCR

tendrá quince (15) días para informar si acoge o no la *Reconsideración.* Reglamento de Corrección y Rehabilitación, supra, Regla XIV. En esa línea, dispone que si se denegara de plano o el miembro de la población correccional no recibe respuesta de su solicitud de *Reconsideración* en el término de quince (15) días, podrá recurrir, por escrito, en *Revisión Judicial.* Reglamento de Corrección y Rehabilitación, supra, Regla XIV. A su vez, este término comenzará a correr nuevamente desde el recibo de la notificación de negativa o desde que se expiren los quince (15) días, según sea el caso. Reglamento de Corrección y Rehabilitación, supra, Regla XIV. Si se acoge la solicitud de *Reconsideración,* el coordinador tendrá treinta (30) días laborables para emitir *Resolución de Reconsideración.* Reglamento de Corrección y Rehabilitación, supra, Regla XIV. Dicho término comenzará a decursar desde la fecha en que se emitió en la respuesta de la *Reconsideración* al miembro de la población correccional salvo que medie justa causa. Reglamento de Corrección y Rehabilitación, supra, Regla XIV. La Regla XV estatuye que el miembro de la población correccional que desee radicar un recurso de *Revisión Judicial* ante esta curia tendrá treinta (30) días calendarios, a partir de la fecha del archivo en autos de la copia de la notificación de la *Resolución de Reconsideración,* emitida por el Coordinador de Remedios Administrativos o noventa (90) días a partir de la radicación de la *Solicitud de Reconsideración* acogida, si el DCR no actúa conforme a la misma. Reglamento de Corrección y Rehabilitación, supra, Regla XV.

**IV.**

En el caso ante nuestra consideración, el señor Joselito Cruz Campos arguyó que el DCR ha incumplido en despacharle y entregarle los medicamentos recetados para su condición de salud. Además, el recurrente advirtió que su vida estaba en peligro por ser propenso a sufrir derrames cerebrales e infartos al corazón, si no se

le administraban los medicamentos. Pese a haber agotado los remedios administrativos, alegó que la inacción del DCR era reiterada y atenta contra su vida.

Por su parte el DCR nos ha presentado evidencia de que se le están administrando los medicamentos al recurrente según recetados. No obstante, reconoce que el medicamento Trulicity no se le brindó al recurrente cuando le fue recetado (en mayo de 2024). Comenzó el tratamiento con dicho medicamento el 28 de septiembre de 2024, con posterioridad a que el caso de autos fuera presentado ante este tribunal.

Tras un análisis objetivo, sereno y cuidadoso del expediente, procede desestimar el recurso, al tornarse académico.

La doctrina de academicidad establece que, de no existir controversia entre las partes, corresponde la desestimación del caso. En esa línea, surge del expediente que, el DCR corrigió la situación médica del recurrente al evidenciar el despacho de los medicamentos. Así las cosas, el presente caso se tornó académico al cesar de existir la controversia entre las partes sobre el despacho de medicamentos. Consecuentemente, corresponde que desestimemos el presente recurso. No obstante, advertimos que el DCR **tiene** un deber ministerial en cumplir atender los asuntos médicos de los miembros de la población correccional, sin demora inexcusable. En este caso, de ocurrir alguna demora en la entrega de los medicamentos, el recurrente puede presentar nuevamente un recurso de *revisión judicial.*

**V.**

Por los fundamentos pormenorizados, procedemos a desestimar, por académico, el recurso presentado.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones