CC-2003-963                                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Perfect Clearing Services, Inc.<br><br>        Peticionario<br><br>             v.<br><br>Corporación del Centro<br>Cardiovascular de Puerto Rico<br>y del Caribe<br><br>        Recurrido | Certiorari<br><br>2004 TSPR 138<br><br>162 DPR ____ |

Número del Caso: CC-2003-963

Fecha: 16 de agosto de 2004

Tribunal de Circuito de Apelaciones:

                    Circuito Regional I

Juez Ponente:

Panel integrado por su presidente, el juez Gierbolini, y los jueces Cordero y Rodríguez Muñiz.

Abogado de la Parte Peticionaria:

                    Lcdo. Héctor L. Banchs Pascualli

Abogados de la Parte Recurrida:

                    Lcdo. Eduardo A. Vera Ramírez
                    Lcdo. Alberto J. Rodríguez Ramos
                    Lcda. Linda S. Rodríguez Gardeslen

Materia: Servicios de Limpieza

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Perfect Cleaning Services,
Inc.

    Peticionario

    v.                              CC-2003-963      Certiorari

Corporación del Centro
Cardiovascular de Puerto
Rico y del Caribe

    Recurrido

Opinión del Tribunal emitida por el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico, a 16 de agosto de 2004.

Debemos determinar si procedía desestimar la solicitud de revisión judicial presentada por el peticionario Perfect Cleaning Services, Inc. ante el Tribunal de Apelaciones a la luz de la doctrina de agotamiento de remedios administrativos, debido a que no se perfeccionó oportunamente la reconsideración jurisdiccional que dispone el Reglamento Núm. 4727 de la Corporación del Centro Cardiovascular de Puerto Rico y del Caribe.[1]

---

[1] Reglamento para la Adquisición y Venta de Equipos, Materiales y Servicios no Profesionales de la Corporación del Centro Cardiovascular de Puerto Rico y del Caribe de 3 de julio de 1992 (en adelante Reglamento 4727 de la Corporación del Centro Cardiovascular, Reglamento 4727 o Reglamento).

I

La Corporación del Centro Cardiovascular de Puerto Rico y del Caribe (en adelante Corporación del Centro Cardiovascular o Corporación) invitó al público a participar en una subasta para servicios de limpieza. A la misma asistieron como licitadores North Janitorial Services Inc., NBM Enterprises, Multi Clean, Inc. y Perfect Cleaning Service, Inc. (en adelante Perfect Cleaning). El 4 de abril de 2003, la Corporación del Centro Cardiovascular adjudicó la subasta a favor de NBM Enterprises y lo notificó a Perfect Cleaning mediante facsímil el 9 de abril de 2003. En fecha posterior, se envió notificación mediante correo, la cual no consta en autos.

En la notificación de la adjudicación recibida por Perfect Cleaning se advirtió que ésta podía solicitar reconsideración dentro de los próximos diez (10) días a partir del archivo en autos de copia del aviso de la adjudicación de la subasta. Se expresó, asimismo, que la parte adversamente afectada "que haya agotado todos los remedios provistos por la [Junta de Revisión de Subastas Formales], particularmente el foro apelativo de la Junta de Revisión de Subastas Formales", podría solicitar revisión ante el Tribunal de Apelaciones. Esta notificación está fechada de 4 de abril de 2003 y hace constar esa misma fecha como día en que se adjudicó la subasta.

El 14 de abril de 2003, Perfect Cleaning presentó moción de reconsideración ante la Junta de Revisión de

Subastas Formales. Se alegó que la subasta fue adjudicada a un licitador que no cumplió con las especificaciones requeridas y el cual además cotizó un precio mayor que Perfect Cleaning. A pesar de que la Junta de Revisión de Subastas Formales no consideró dicha moción dentro de los próximos diez (10) días de haberse presentado, el 2 de mayo de 2003 emitió resolución mediante la cual desestimó la moción de reconsideración. Fundamentó la desestimación en el hecho de que no se había prestado la fianza que requiere el Reglamento 4727 de la Corporación del Centro Cardiovascular como requisito indispensable para perfeccionar una solicitud de reconsideración y/o impugnación de subasta.

Previo a recibir notificación de esta resolución, el 5 de mayo de 2003, Perfect Cleaning acudió al Tribunal de Apelaciones para solicitar revisión judicial de la adjudicación de la subasta. Por su parte, la Corporación del Centro Cardiovascular se opuso a la solicitud de revisión ante el tribunal apelativo. Sostuvo, en síntesis, que dicho tribunal carecía de jurisdicción para entender en el caso debido a que Perfect Cleaning no perfeccionó la moción de reconsideración ante la agencia administrativa al no prestar la fianza requerida para ello, requisito jurisdiccional para la revisión judicial según el Reglamento 4727 de la Corporación del Centro Cardiovascular. Luego de varios trámites apelativos procesales, el foro intermedio acogió la oposición de la

Corporación y desestimó el recurso presentado por Perfect Cleaning en virtud de la doctrina de agotamiento de remedios administrativos.

Así las cosas, Perfect Cleaning acudió ante nos mediante solicitud de *certiorari*. Examinada su solicitud, le concedimos un término a la Corporación del Centro Cardiovascular para que mostrara causa por la cual no debíamos revocar la resolución recurrida. En específico, le solicitamos que expusiera su posición sobre la validez del requisito de fianza que impone su Reglamento Núm. 4727 a la luz de las disposiciones de la Ley de Procedimiento Administrativo Uniforme.[2] En cumplimiento con nuestra orden, la Corporación del Centro Cardiovascular compareció para sostener la validez de la fianza requerida como un ejercicio legítimo de los poderes amplios delegados por la Asamblea Legislativa a dicha corporación gubernamental. Con el beneficio de los argumentos de ambas partes, pasamos a dilucidar la controversia planteada.

Procede que evaluemos la decisión del Tribunal de Apelaciones de desestimar el recurso de revisión judicial presentado por Perfect Cleaning. En particular, debemos examinar la validez del requerimiento mediante reglamento de una fianza como requisito para perfeccionar una moción de reconsideración ante la agencia administrativa, así como también la exigencia reglamentaria de una solicitud de

---

[2] Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. sec. 2101 *et seq*. En adelante LPAU.

reconsideración como requisito jurisdiccional para la revisión judicial. Veamos.

I

A

La Ley Núm. 51 de 30 de junio de 1986 creó la Corporación del Centro Cardiovascular con el propósito de que la misma provea acceso a equipos y tratamientos avanzados para atender los problemas cardiovasculares de los ciudadanos de Puerto Rico y del Caribe. Exposición de Motivos de la Ley Núm. 51 de 1986, *supra*, Leyes de Puerto Rico, 1986, págs. 175-176. Además de eliminar o mitigar los padecimientos cardiovasculares de los ciudadanos, la Corporación tiene el fin de fomentar la enseñanza, investigación y desarrollo de los profesionales de la salud en esta área de la medicina. *Id*.

Con esos fines, la ley creó una corporación pública dirigida por una junta de directores. 24 L.P.R.A. 343a. Se dispuso, además, que la Corporación del Centro Cardiovascular estaría a cargo de formular o ejecutar la política pública relacionada a la planificación, organización, operación y administración de los servicios cardiovasculares en Puerto Rico. 24 L.P.R.A. sec. 343b. A través de su junta de directores, se le facultó para coordinar con el Departamento de Salud, el Recinto de Ciencias Médicas de la Universidad de Puerto Rico, la Administración de Servicios Médicos y los sectores privados involucrados en la prestación de servicios cardiovasculares

en Puerto Rico, todas las gestiones necesarias para el cumplimiento con sus fines y propósitos. *Id*.

Asimismo, se le reconoció a la Corporación del Centro Cardiovascular facultad para, entre otras cosas: (1) elaborar un presupuesto operacional anual; (2) establecer los servicios, unidades y departamentos necesarios para su funcionamiento efectivo; (3)establecer e implantar mecanismos adecuados para garantizar la calidad del servicio al paciente y la corrección de cualesquiera fallas, y para la evaluación de credenciales y aprobación, suspensión o revocación de los privilegios para ejercer en sus facilidades; (4) establecer su propia estructura administrativa; (5) tomar dinero prestado de instituciones privadas así como del gobierno estatal o federal; (6) tener completo dominio y supervisión de todos sus equipos y facilidades; (6) demandar y ser demandada; (7) formular, adoptar, enmendar y derogar las reglas y los reglamentos necesarios para su funcionamiento; (8) negociar y otorgar toda clase de contratos con personas naturales o jurídicas para lograr los propósitos que le fueron encomendados; (9) contratar y designar personal médico para dar tratamiento directo a pacientes; (10) comprar los materiales, suministros, equipos, piezas y servicios que sean necesarios y disponer de los mismos de la manera que estime conveniente cuando éstos dejen de servir sus propósitos; y (11) llevar a cabo por sí o contratar las obras de construcción, mejoras, ampliación, extensión o reparación

que necesite la Corporación para cumplir con sus objetivos o fines. 24 L.P.R.A. sec. 343b.

Estos poderes de la Corporación del Centro Cardiovascular le fueron conferidos a su correspondiente junta de directores, la cual está encargada de nombrar un director ejecutivo. 24 L.P.R.A. sec. 343c. Este director ejecutivo, a su vez, es responsable de las cuestiones administrativas y operacionales de la Corporación. *Id.* Para ello, la Ley Núm. 51 de 1986, *supra*, le confiere a éste el poder de nombrar a un subdirector, planificar y dirigir el funcionamiento de la Corporación y delegar en otros funcionarios sus poderes y facultades, con excepción de la facultad de promulgar reglamentos. 24 L.P.R.A. sec. 343d.

Además, la Asamblea Legislativa eximió expresamente a la Corporación del Centro Cardiovascular de la aplicación de la Ley de Personal del Servicio Público de Puerto Rico,[3] de las disposiciones de la Ley de Compras y Suministros del Estado Libre Asociado de Puerto Rico[4] y de todos los reglamentos aprobados al amparo de las mismas. 24 L.P.R.A. sec. 343j. Por consiguiente, se le ordenó aprobar un

---

[3] Ley Núm. 5 de 14 de octubre de 1975, 3 L.P.R.A. sec. 1301 *et seq.*

[4] Esta referencia parece aludir a la Ley Núm. 196 de 4 de agosto de 1979, 3 L.P.R.A. 931 *et seq.*, conocida como la Ley de la Administración de Servicios Generales, la cual dispone todo lo concerniente a las compras, servicios y suministros del Gobierno.

Reglamento General, un Reglamento de Personal y un Reglamento de Compras. *Id*.

B

A la luz de la autoridad conferida por la Ley Núm. 51 de 1986, *supra*, la Corporación promulgó el Reglamento 4727, *supra*, sobre compra y venta de equipos, materiales y servicios no profesionales. El mismo fue aprobado el 18 de abril de 1992 y dispuso que su vigencia sería efectiva una vez cumplidos los requisitos de la LPAU, lo cual, según se desprende de la copia de éste en autos, ocurrió el 3 de julio de 1992.

El Reglamento 4727 se aprobó con el propósito de, entre otras cosas, establecer la Junta de Subastas y disponer los procedimientos ante la Junta de Revisión de Subastas Formales. Secs. 7.1.2 y 7.1.3 del Reglamento. La Junta de Subastas de la Corporación se compone de cinco (5) personas nombradas por el director ejecutivo de la Corporación y está encargada de adjudicar subastas cuyo monto excedan los $25,000 -subastas formales-. Sec. 8.22 del Reglamento. Por su parte, la Junta de Revisión de Subastas Formales la componen un mínimo de tres (3) miembros nombrados por la Junta de la Corporación del Centro Cardiovascular con el fin de que atiendan la impugnación de subastas adjudicadas por la Junta de Subastas. Sec. 8.23 del Reglamento. Ésta tiene la obligación de resolver y evaluar los asuntos que se presenten ante su consideración conforme a las

disposiciones de la LPAU, *supra*. Sec. 34.4.3 del Reglamento.

Por su parte, la Sec. 23.7.2.6. del Reglamento 4727 dispone que el aviso de adjudicación de una subasta formal advertirá el derecho de la parte adversamente afectada a presentar una moción de reconsideración y/o impugnación ante la Junta de Revisión de Subastas Formales y los términos correspondientes. Esta misma sección también requiere que se advierta en el aviso de adjudicación que:

> Una parte adversamente afectada que haya agotado todos los remedios provistos por la [Junta de Revisión de Subastas Formales], podrá presentar una solicitud de revisión ante el [Tribunal de Apelaciones] dentro de un término de diez (10) días contados a partir de la fecha del archivo en autos de copia de la notificación de la orden o resolución final de la Corporación. La mera radicación de una solicitud de revisión sobre impugnación de subastas no tendrá el efecto de paralizar la adjudicación de la subasta impugnada. *Id*.; *además*, Sec. 24.3 del Reglamento. (Énfasis suplido).

Además, el Reglamento exige que la parte que acuda a la Junta de Revisión de Subastas Formales deposite una fianza en conjunto con el recurso que presente ante dicha Junta. Sec. 34.11 del Reglamento. Esta fianza tiene el propósito de responder por cualquier aumento en el costo que deba pagar la Corporación del Centro Cardiovascular por razón de la dilación en el trámite de la compra y por los daños y perjuicios que se ocasionen a la Corporación por la dilación en la adquisición de los bienes y servicios, si se determina que la acción presentada fue temeraria. Secs. 34.11.1 y 34.11.2 del Reglamento. "El no radicar las

fianzas requeridas será razón suficiente para desestimar el recurso de revisión o solicitud de intervención." Sec. 34.11 del Reglamento.

Conforme al trámite administrativo dispuesto en este reglamento, la parte adversamente afectada en un procedimiento de subasta formal <u>tiene</u> que presentar moción de reconsideración y/o impugnación de subasta ante la Junta de Revisión de Subastas Formales, para lo cual deberá prestar una fianza. Solamente después de perfeccionar esta moción de reconsideración es que podría acudir en revisión judicial ante el Tribunal de Apelaciones.

Es a la luz de esta estructura administrativa que Perfect Cleaning presentó una moción de reconsideración ante la Junta de Revisión de Subastas Formales de la Corporación del Centro Cardiovascular, luego de que la Junta de Subastas de dicha corporación no adjudicara la subasta a su favor. Su moción fue desestimada por incumplimiento con la sección 34.11 del Reglamento 4727, que exige el depósito de una fianza como requisito para el perfeccionamiento de la moción de reconsideración *so pena* de desestimación de la solicitud. El Tribunal de Apelaciones desestimó, por lo tanto, el recurso de revisión judicial presentado por Perfect Cleaning al concluir que no se habían agotado los remedios administrativos.

Al examinar el ordenamiento administrativo provisto en la LPAU, *supra*, en cuanto a los procedimientos de subastas conjuntamente con la ley habilitadora de la Corporación del

Centro Cardiovascular, resolvemos que dicha corporación actuó de manera *ultra vires* al requerir la presentación de una moción de reconsideración y el correspondiente depósito de una fianza como requisito jurisdiccional para la solicitud de revisión judicial. Veamos.

III

A

La LPAU fue promulgada con el fin de disponer uniformidad a los procedimientos administrativos del Estado Libre Asociado de Puerto Rico. En la misma se dispuso un cuerpo de reglas mínimas para gobernar de manera uniforme los procesos de adjudicación y reglamentación en la administración pública. Asoc. de Dueños Casas Parguera, Inc. v. Junta de Planificación, 148 D.P.R. 307 (1999); Pagán Ramos v. F.S.E., 129 D.P.R. 888 (1992).

En consideración a la uniformidad que se buscó promover, la LPAU sustituyó los procedimientos de las agencias que sean incompatible con sus preceptos y ordenó el manejo de los asuntos administrativos de manera consistente con sus disposiciones. Asoc. de Dueños Casas Parguera, Inc. v. Junta de Planificación, *supra*; Pagán Ramos v. F.S.E., *supra*, a las págs. 901-902. Conforme a ello, hemos resuelto que, como norma general, las disposiciones de la LPAU desplazan y tienen primacía sobre toda regla de una agencia en particular que sea contraria a ésta. Hernández v. Golden Tower Dev. Corp., 125 D.P.R. 744 (1990); Pagán Ramos v. F.S.E., *supra*, a la pág. 902. Por

lo tanto, desde la aprobación del ordenamiento administrativo uniforme provisto en la LPAU, las agencias vienen obligadas a conducir sus procedimientos de reglamentación, adjudicación y concesión de licencias y permisos en cumplimiento con los capítulos correspondientes de esta ley.

Con relación a los procedimientos administrativos de adjudicación de subastas en particular, la LPAU solamente uniformó los procedimientos de reconsideración ante la agencia y la revisión de la orden o resolución final por el foro judicial. 3 L.P.R.A. secs. 2151, 2169 y 2172. De esa manera se buscó simplificar los procedimientos de subastas al eximirlos del alcance del Capítulo III de la LAPU sobre procedimientos adjudicativos. Senado del Estado Libre Asociado de Puerto Rico, *Informe sobre el P. de la C. 232*, 25 de junio de 1989, págs. 5-6; 3 L.P.R.A. sec. 2151. A las agencias, por su parte, se le delegó la facultad individual de aprobar las normas, condiciones y especificaciones para las subastas. *Id.*; *además*, 3 L.P.R.A. sec. 2169. Por lo tanto, con respecto a las subastas, sólo los procedimientos de reconsideración y revisión judicial se consideran formales. *Id.*; *además*, 3 L.P.R.A. secs, 2151 y 2172; Cotto v. Depto. de Educación, 138 D.P.R. 658 (1995).

Sobre la solicitud de reconsideración dentro de un procedimiento de adjudicación de subasta, la sección 3.19 de la LAPU señala que la parte adversamente afectada por una decisión "podrá, dentro del término de diez (10) días a

partir de la adjudicación de la subasta, presentar una moción de reconsideración ante la agencia o entidad apelativa de subasta, de existir una en la agencia, según sea el caso".[5] 3 L.P.R.A. sec. 2169. (Énfasis suplido). Para los casos de impugnación de subasta ante el foro judicial, se provee que:

> [L]a parte adversamente afectada por una orden o resolución final de la agencia, o de la entidad apelativa de subastas, según sea el caso, podrá presentar una solicitud de revisión ante el Tribunal de Circuito de Apelaciones dentro de un término de diez (10) días contados a partir del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o la entidad apelativa, o dentro de los diez (10) días de haber transcurrido el plazo dispuesto por la sec. 2169 de este título. La mera presentación de una solicitud de revisión al amparo de esta sección no tendrá el efecto de paralizar la adjudicación de la subasta impugnada. 3 L.P.R.A. sec. 2172.

C

De otra parte, es norma altamente conocida que la autoridad de una agencia administrativa para aprobar reglas o reglamentos surge directamente de su ley habilitadora. Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Colombia, Forum, 2001, págs. 122-123, 131 *et seq*. El

---

[5] Se dispone, además, que si la agencia o la entidad apelativa toma alguna determinación en cuanto a la solicitud de reconsideración, el término para solicitar la revisión judicial comenzará a transcurrir desde la fecha en que se archiva en autos copia de la notificación de la decisión de la agencia o la entidad apelativa resolviendo la moción. Si la agencia o la entidad apelativa no toma determinación alguna dentro de los diez (10) días de haberse presentado la reconsideración, a partir del vencimiento de dicho término comenzará a contar el término para la revisión judicial.

estatuto orgánico o ley habilitadora de una agencia es lo que "define y delimita" la extensión de la jurisdicción de la agencia. *Id*., a la pág.  131. En cuanto a esto, el Prof. Fernández Quiñones nos explica que:

> Cualquier transgresión a lo pautado por la ley [habilitadora de la agencia] respecto a los linderos de acción constituye una acción ilícita. Se considera que dicha actuación ha sido efectuada sin autoridad.  La importancia de esta doctrina en el campo de la reglamentación es incuestionable.  Descansa lo aseverado en la premisa de carácter absoluto de que el poder de aprobar reglas y reglamentos no puede trascender la autoridad delegada. Por tal razón, "un reglamento para implementar la ejecución de una ley puede complementarla, pero no estar en conflicto con ésta".  Es nulo el reglamento que esté en conflicto o en contra de la ley.  *Id*., a la pág. 131; *citando a* P.S.P. v. Comisión Estatal de Elecciones, 110 D.P.R. 400, 409 (1980); Infante v. Trib. Examinador de Médicos, 84 D.P.R. 308 (1961); y otras citas omitidas.

Por ello, al determinarse si una agencia cuenta con facultad para reglamentar cierto asunto hay que atenerse a lo dispuesto en su ley habilitadora. Franco v. Depto. de Educación, 148 D.P.R.  703, 711-712 (1999); *además*, Fernández Quiñones, *supra*, a las págs. 122-123. De esa manera se evita que la agencia exceda el marco de autoridad delegado por la Asamblea Legislativa y actúe de manera ilegal o *ultra vires*. Puerto Rico Telephone Co. v. Junta Reglamentadota de Telecomunicaciones, res. el 12 de junio de 2000, 2000 TSPR 83. De igual forma, la regla o reglamento debe ser razonable. Franco v. Depto. de Educación, *supra*, a la pág. 712. Hay que asegurar que la agencia no imponga normas arbitrarias o caprichosas ajenas

al propósito de las funciones que le fueron delegadas. *Id*., Carrero v. Depto. de Educación, 141 D.P.R. 830, 837 (1996).

Al precisar si la agencia ha excedido su autoridad en el ámbito reglamentario, le corresponde al tribunal evaluar: (1) si se delegó poder de reglamentación; (2) si la actuación administrativa está autorizada por ley; (3) si la reglamentación promulgada está dentro de los amplios poderes delegados; (4) si al aprobarse el reglamento se cumplió con las normas procesales de la ley habilitadora de la agencia y la LPAU; y (5) si la reglamentación es arbitraria o caprichosa. Pérez Santos v. Comisión Relaciones del Trabajo, res. el 4 de octubre de 2002, 2002 TSPR 133; Caribe Communications v. Puerto Rico Telephone Co, Inc., res. el 18 de junio de 2002, 2002 TSPR 83. La agencia habrá actuado de manera *ultra vires* de concluirse que la regla o reglamento examinado no se aprobó con arreglo a todos estos requisitos. Caribe Communications v. Puerto Rico Telephone Co, Inc., *supra*; *además*, Fernández Quiñones, *supra*, a la pág. 130. Por lo tanto, dicha actuación se considerará nula.

Vista la normativa expuesta anteriormente, veamos los hechos del presente caso.

IV

En el caso de autos, la Corporación del Centro Cardiovascular ordena mediante reglamento que se solicite reconsideración de la adjudicación de una subasta formal como remedio administrativo jurisdiccional. Además, exige

la prestación de una fianza como requisito indispensable para el perfeccionamiento de dicha moción de reconsideración. No obstante, del estudio de la autoridad delegada mediante la ley habilitadora de la Corporación, surge que la Asamblea Legislativa no le delegó autoridad para imponer restricciones al recurso de revisión judicial más allá de las provistas en la LPAU.

Para los casos de adjudicación de subastas, la LPAU uniformó los procesos de reconsideración y revisión judicial. Por lo tanto, las agencias deben atenerse a lo allí señalado en cuanto a dichos procesos, a falta de que otra cosa se haya dispuesto en su estatuto orgánico. **Al respecto hemos señalado que las agencias "carecen de facultad para adoptar reglamentación que imponga requisitos adicionales a aquellos establecidos por las leyes que rigen la revisión de la agencia". Pérez Santos v. Comisión Relaciones del Trabajo**, *supra*; **Franco v. Depto. De Educación**, *supra*, **a la pág. 712;** *citando a* **Carabarín** *et al* **v. A.R.P.E.**, supra; *y a* **Pagán Ramos v. F.S.E.**, *supra*. **Consiguientemente, a pesar de que las agencias tienen autoridad para disponer todo lo relativo a la adjudicación de subastas, en cuanto a la moción de reconsideración y revisión judicial están obligadas a observar las garantías mínimas uniformes que dispone la LPAU al respecto, a menos que la Asamblea Legislativa disponga otra cosa a través de la ley habilitadora de la agencia. 3 L.P.R.A. sec. 2151;** *además*, **L.P.C. & D., Inc. v. Autoridad de Carreteras**, **149**

**D.P.R. 869 (1999); Aponte v. Policía de Puerto Rico, 142 D.P.R. 75 (1996).**

Aunque ciertamente la Corporación del Centro Cardiovascular está facultada mediante ley para establecer su propia estructura administrativa y formular y adoptar las reglas y reglamentos necesarios para su funcionamiento, incluido un reglamento para la compra y venta de equipos, materiales y servicios no profesionales, de ello no se puede deducir que se le delegó autoridad para exigir, mediante reglamento, agotar remedios administrativos adicionales no contemplados en su ley habilitadora. **Una agencia no puede mediante reglamento disponer remedios administrativos que menoscaben las garantías mínimas uniformes recogidas en la LPAU.** La autoridad para disponer gestiones administrativas jurisdiccionales para la revisión judicial sólo puede ser concedida por la Asamblea Legislativa a la agencia mediante ley. El ente administrativo no puede abrogarse esa facultad mediante reglamento.

**Precisamente al revisar la jurisdicción del Departamento de Educación para atender controversias laborales entre éste y sus empleados, en Franco v. Depto de Educación, *supra*, resolvimos que "si la agencia no está llamada por ley a adjudicar formalmente cierta controversia, la mera creación de un reglamento adjudicativo no le puede otorgar a la agencia una autoridad que no tiene sobre dicha controversia". Pág. 713.**

En este caso, como expresáramos, aunque la Corporación del Centro Cardiovascular se le delegó autoridad para gestionar por sí misma la compra y venta de materiales y servicios y para reglamentar los procedimientos correspondientes para ello, en su ley habilitadora no se expresó o implicó de manera alguna que ésta podía requerir la presentación de una moción de reconsideración como requisito jurisdiccional para la revisión judicial o imponer una fianza para que la misma sea perfeccionada. Por lo tanto, procede concluir que dicha entidad corporativa actúo de manera *ultra vires* al adicionar, mediante reglamento, remedios administrativos que no fueron autorizados en su ley habilitadora y que contradicen además las normas uniformes dispuestas en la LPAU. Máxime, cuando según lo dispuesto en la sec. 3.19 de la LPAU citada anteriormente, la solicitud de reconsideración en los procedimientos adjudicativos de subastas es opcional. 3 L.P.R.A. sec. 2169.

No obstante reconocerse una interpretación amplia, abarcadora y flexible de la delegación de poderes a las agencias administrativas por la Asamblea Legislativa, las primeras deben actuar conforme a su ley habilitadora y siempre actuar en busca del cumplimiento de los propósitos para los que fueron creadas. Caribe Communications v. Puerto Rico Telephone Co, Inc., *supra*. Esta doctrina de delegación amplia de poderes no incluye la facultad administrativa de imponer requisitos jurisdiccionales para

la revisión judicial mediante reglamento. En el caso de autos, la Corporación excedió sus facultades al requerir una moción de reconsideración y la prestación de la fianza correspondiente <u>mediante reglamento y sin autoridad en ley para ello</u>.

Valga señalar que particularmente sobre la moción de reconsideración, en <u>Aponte v. Policía de P.R.</u>, *supra*, resolvimos que en los procedimientos administrativos ordinarios la misma puede tener carácter jurisdiccional si así lo dispone la <u>ley habilitadora</u> de la agencia con posterioridad al 1995, fecha en se enmendó la LPAU para disponer que la misma no sería un requisito jurisdiccional para la revisión judicial. No obstante, en el caso de marras, distinto a <u>Aponte</u>, la moción de reconsideración y la fianza se disponen mediante reglamento sin que surja de la ley habilitadora delegación expresa o implícita para ello, lo cual constituye una extralimitación de la autoridad de la agencia para reglamentar.

Requerirle a una parte afectada adversamente por una decisión administrativa que acuda a cierto foro apelativo de la agencia creado mediante reglamento, sin que exista autorización en ley para ello, es una actuación *ultra vires* del foro administrativo, y por ende, nula. <u>Franco v. Depto. de Educación</u>, *supra*, a la pág. 714. No resolver así conllevaría dar luz verde para que las agencias le requieran a las partes agotar los remedios administrativos que éstas tengan a bien crear. Esto, además, retrasaría

indeterminadamente la revisión judicial de las decisiones administrativas, aumentaría el costo del proceso administrativo y dilataría la resolución pronta de las controversias en este contexto, intereses altamente apreciados en el campo del derecho administrativo.

Más aún en los procedimientos adjudicativos de subastas, en los cuales la Asamblea Legislativa ha demostrado un interés particular en que se hagan de manera expedita. Para ello se optó por impartirle un carácter informal y delegar su creación e implementación a las agencias individualmente. *Véase*, 3 L.P.R.A. sec. 2169. En la LPAU sólo se regula formalmente la fase de reconsideración y revisión judicial, y aún así se disponen términos considerablemente más cortos que los contemplados para la reconsideración y revisión judicial de los procedimientos administrativos ordinarios. *Véase*, 3 L.P.R.A. secs. 2165, 2169 y 2172.

Por último, resolvemos además que, en vista de que Perfect Cleaning acudió al Tribunal de Apelaciones en cumplimiento con lo que entendía eran términos y procesos válidos según el Reglamento 4727 de la Corporación del Centro Cardiovascular, su recurso de revisión judicial fue interpuesto oportunamente. El mismo se presentó el 5 de mayo de 2003, último día hábil luego de vencido el término de diez (10) días para que la Junta de Revisión de Subastas

Formales pudiese considerar la moción de reconsideración presentada el 14 de abril de 2003.[6]

V

Por consiguiente, se expide el auto de *certiorari* y se revoca la resolución del Tribunal de Apelaciones mediante la cual se desestimó el recurso de revisión judicial presentado por Perfect Cleaning en el caso de autos. Resolvemos que tanto la solicitud de reconsideración como la fianza requeridas por el Reglamento 4727 de la Corporación del Centro Cardiovascular son requisitos jurisdiccionales *ultra vires* y, por consiguiente, nulos. Se devuelve el caso de autos al foro apelativo intermedio para la continuación de los procedimientos de forma consistente con lo aquí resuelto.

Se dictará sentencia de conformidad.

Federico Hernández Denton
Juez Presidente

---

[6] El 4 de mayo de 2003, cuando realmente expiró el término para presentar la revisión judicial, luego de que la Junta de Revisión de Subastas Formales no hubiese actuado sobre la moción de reconsideración dentro de los diez (10) días de haberse presentado la misma, fue domingo. Por lo tanto, la solicitud de revisión judicial ante el tribunal apelativo fue oportunamente presentada el lunes 5 de mayo de 2003.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Perfect Cleaning Services,
Inc.

    Peticionario

    v.                   CC-2003-963       Certiorari

Corporación del Centro
Cardiovascular de Puerto
Rico y del Caribe

    Recurrido


SENTENCIA


San Juan, Puerto Rico, a 16 de agosto de 2004.

    Por lo anteriormente expuesto en la Opinión que antecede la cual se hace formar parte integral de la presente, se expide el auto de *certiorari* y se revoca la resolución del Tribunal de Apelaciones mediante la cual se desestimó el recurso de revisión judicial presentado por Perfect Cleaning en el caso de autos. Resolvemos que tanto la solicitud de reconsideración como la fianza requeridas por el Reglamento 4727 de la Corporación del Centro Cardiovascular son requisitos jurisdiccionales *ultra vires* y, por consiguiente, nulos. Se devuelve el caso de autos al foro apelativo intermedio para la continuación de los procedimientos de forma consistente con lo aquí resuelto.

    Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal. El Juez Asociado señor Rebollo López concurre sin opinión escrita.


Patricia Otón Olivieri
Secretaria del Tribunal Supremo