EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Administración de Servicios Generales | Certiorari |
| Recurrida | |
| v. | 2006 TSPR 113 |
| Municipio de San Juan | 168 DPR _____ |
| Peticionario | |

Número del Caso: CC-2003-837

Fecha: 30 de junio de 2006

Tribunal de Apelaciones:

> Región Judicial de San Juan Panel II

Jueza Ponente:

> Hon. Zadette Bajandas Vélez

Oficina del Procurador General:

> Lcdo. Héctor Clemente Delgado
> Procurador General Auxiliar

Abogados de la Parte Peticionaria:

> Lcda. Rosa Campos Silva
> Lcdo. Simone Cataldi Malpica

Materia: Revisión Administrativa procedente de la Comisión para Resolver querellas sobre Pagos y Deudas entre Agencias Gubernamentales

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Administración de Servicios
Generales

    Recurrida

       v.                        CC-2003-837      Certiorari

Municipio de San Juan

    Peticionario

Opinión del Tribunal emitida por el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico, a 30 de junio de 2006.

El caso del epígrafe nos permite aclarar el alcance de la jurisdicción de la Comisión para Resolver Controversias sobre Pagos y Deudas entre Agencias Gubernamentales (en adelante, la Comisión). Esto en consideración al argumento del Municipio de San Juan de que la Comisión no tiene autoridad para dilucidar la existencia de una deuda que, según aduce la Administración de Servicios Generales, posee el referido Municipio con dicha agencia gubernamental. Veamos.

I

En febrero de 2003, la Administración de Servicios Generales (en adelante, la Administración) presentó ante la Comisión una

querella contra el Municipio de San Juan (en adelante, el Municipio). Adujo que el Municipio le adeudaba $311,766.57 por servicios de transporte y mantenimiento de vehículos, almacén, imprenta y otros servicios administrativos provistos por la Administración entre 1999 y 2002. Igualmente, sostuvo que había facturado mensualmente por estos servicios y había realizado varias gestiones de cobro, pero el Municipio no respondió. Alegó, además, que esta falta de pago lesionaba su solvencia económica y, por tanto, sus operaciones, toda vez que tenía que generar sus propios fondos para mantenerse laborando.

Luego de ciertos trámites, el Municipio, sin someterse a la jurisdicción de la Comisión, presentó una moción en la cual solicitó la paralización de los procesos. Informó que había impugnado ante el tribunal de instancia la constitucionalidad de la ley habilitadora de la Comisión,[1] y había solicitado un *injunction* para paralizar el procedimiento administrativo. La Oficial Examinadora de la Comisión declaró no ha lugar la petición de paralización, concedió término para contestar la querella y estableció el itinerario procesal del caso.

Ante este hecho, el Municipio solicitó la desestimación de la querella por falta de jurisdicción sobre la materia. Argumentó que, de acuerdo a la ley habilitadora de la Comisión, su facultad se limitaba a

---

[1]Ley Núm. 80 de 3 de junio de 1980, 3 L.P.R.A. secs. 1751 *et seq.*

investigar y resolver controversias entre agencias gubernamentales relativas al monto adeudado o sobre el modo, la forma o la manera que debía realizarse un pago, mas no sobre la existencia o legalidad de una deuda. Según razonó, la Comisión sólo cuenta con conocimiento técnico especializado para realizar un cómputo matemático a base de los datos que las partes presenten sobre la deuda. Sin embargo, la existencia de una deuda es una cuestión estrictamente de derecho que le corresponde dirimir a los tribunales. Por último, sostuvo que existía una controversia real y genuina sobre la existencia de la deuda, pues la Administración había facturado al Municipio por servicios que fueron cancelados o no provistos por dicha agencia.

La Oficial Examinadora denegó la solicitud de desestimación y reiteró el itinerario procesal previamente ordenado. A consecuencia de ello, el Municipio solicitó al antiguo Tribunal de Circuito de Apelaciones la paralización de los procedimientos administrativos y la revisión judicial del referido dictamen. No obstante, el foro apelativo intermedio declaró no ha lugar la solicitud de paralización y confirmó la decisión de la Oficial Examinadora. Concluyó que el poder que posee la Comisión para investigar pagos y deudas entre agencias se extiende también a investigar la existencia de la deuda.

Oportunamente, el Municipio presentó ante nos una petición de *certiorari*. En ésta imputó al foro apelativo haber errado al confirmar la decisión de la Comisión. Esto a base de los mismos argumentos presentados en su moción de desestimación por falta de jurisdicción. Vista su petición, expedimos el auto solicitado. Estando el caso sometido con la comparecencia de ambas partes, resolvemos.[2]

II

A

El término "jurisdicción" significa el poder o autoridad que posee un tribunal o un organismo administrativo para considerar y decidir casos o controversias. *Roberts v. USO Council of P.R.*, 145 D.P.R. 58 (1998); *Gearheart v. Haskell*, 87 D.P.R. 57 (1963). Conforme nuestro ordenamiento jurídico, una agencia administrativa únicamente tiene los poderes otorgados expresamente por su ley habilitadora y aquellos que sean indispensables para llevar a cabo sus deberes y responsabilidades. *Raimundi Meléndez v. Productora de Agregados Inc.*, res. el 21 de junio de 2004, 2004 TSPR 106.

La ley habilitadora es el mecanismo legal mediante el cual se autoriza y se delega a la agencia

---

[2] De entrada, debemos aclarar que procede nuestra revisión como excepción a la doctrina de que únicamente son revisables las determinaciones finales de las agencias, en vista de que aquí se impugna la jurisdicción de la Comisión para entender en esta controversia. *Véase J. Exam. Tec. Med. v. Elías*, 144 D.P.R. 483 (1997).

administrativa los poderes necesarios para que actúe conforme al propósito perseguido por el legislador al crearla. *Caribe Communications, Inc. v. Puerto Rico Telephone Co., Inc.*, res. el 18 de junio de 2002, 2002 TSPR 83. O sea, esta ley define y delimita la extensión de la jurisdicción del organismo administrativo. *Perfect Cleaning Services, Inc. v. Corporación del Centro Cardiovascular de Puerto Rico y del Caribe Inc.*, res. el 16 de agosto de 2004, 2004 TSPR 138. Por esta razón, una agencia no puede asumir jurisdicción sobre una actividad, materia o conducta cuando no esté claramente autorizada por ley para ello. *P.R. Lighterage Co. v. Caribe Tugboat Corp.*, 111 D.P.R. 686 (1981). Es decir, ni la necesidad, ni la utilidad, ni la conveniencia pueden sustituir al estatuto en cuanto a fuente de poder de una agencia administrativa. *Martínez Segarra v. Rosado Santoni*, res. el 14 de septiembre de 2005, 2005 TSPR 127; *Raimundi Meléndez v. Productora de Agregados Inc.*, supra.

Ahora bien, al interpretar el alcance de los poderes delegados a una agencia administrativa, no debemos limitar el análisis a una interpretación restrictiva de su estatuto habilitador. *Lebrón v. El Comandante Oper. Co., Inc.*, 148 D.P.R. 298 (1999). La ley orgánica de la agencia, así como toda otra ley, debe ser interpretada tomando siempre en cuenta la intención legislativa, atribuyéndole un sentido que asegure el resultado pretendido por el legislador. *Vázquez v. A.R.P.E.*, 128

D.P.R. 513 (1991). En este ejercicio, los tribunales debemos evitar interpretaciones que puedan conducir a resultaros irrazonables o absurdos. *Depto. de Hacienda v. Telefónica Larga Distancia de P.R.*, res. el 17 de marzo de 2005, 2005 TSPR 32. Esto debido a que las leyes deben ser interpretadas con miras a lograr resultados sensatos, lógicos y razonables, que representen y salvaguarden la efectividad de la intención legislativa. *Id.*

En este sentido, nuestro análisis debe centralizarse en identificar si la autoridad ejercida por la agencia cumple con el fin de su ley habilitadora y se encuentra dentro de los poderes que le fueron conferidos. *Caribe Communications, Inc. v. Puerto Rico Telephone Co., Inc., supra.* En otras palabras, debemos determinar si la función desempeñada por el organismo administrativo le fue encomendada legislativamente de manera expresa o implícita, o si surge de su actividad o encomienda primordial. *Id.*

Con este trasfondo en mente, analicemos la ley a través de la cual se creó la Comisión para determinar el alcance de su jurisdicción.

B

Mediante la Ley Núm. 80 de 3 de junio de 1980, 3 L.P.R.A. secs. 1751 *et seq.*, la Asamblea Legislativa instituyó la Comisión para Resolver Controversias sobre Pagos y Deudas entre Agencias Gubernamentales, la cual está compuesta por el Secretario del Departamento de

Justicia, el Secretario del Departamento de Hacienda, y el Director del Negociado de Presupuesto, o sus representantes designados. 3 L.P.R.A. sec. 1751.

La creación de esta entidad respondió a la necesidad de establecer un organismo con personal técnico, especializado y capacitado para atender controversias sobre las cantidades que una agencia adeuda a otra por concepto de servicios prestados. Exposición de Motivos de la Ley Núm. 80, *supra*, Leyes de Puerto Rico, 1980, pág. 242. Su encomienda primordial va dirigida a investigar controversias sobre pagos y deudas entre dichas agencias, y determinar el modo en que deberá pagarse la cantidad adeudada y el monto de dicha cantidad, si el mismo estuviera en controversia. 3 L.P.R.A. sec. 1752(1). Cabe señalar que la Comisión tiene jurisdicción sobre "cualquier departamento, junta, comisión, negociado, división o cualquier otro organismo gubernamental, incluyendo a las corporaciones públicas y a los municipios", conforme lo expresa su ley habilitadora al definir el concepto "agencia". 3 L.P.R.A. sec. 1751. *Véase Mun. de Arecibo v. Mun. de Quebradillas*, res. el 16 de noviembre de 2004, 2004 TSPR 181.

Según surge del historial legislativo de su ley orgánica, "el objetivo principal de la medida [fue] establecer un **mecanismo legal y administrativo** para resolver, de manera aceptable para las partes, las controversias que [surgieran] entre Agencias del Gobierno

por concepto de pagos y deudas entre éstas". (Énfasis suplido.) Informe de la Comisión de Gobierno de la Cámara de Representantes sobre el P. de la C. 1289 de 24 de abril de 1980, pág. 2. Sin embargo, la preocupación predominante del legislador fue la siguiente:

> Las agencias mayormente involucradas en la prestación por pago de algunos servicios a las demás agencias gubernamentales lo son: la Autoridad de Teléfonos, la Autoridad de Energía Eléctrica, la Autoridad de Acueductos y Alcantarillados, la Autoridad de Comunicaciones, la Autoridad de Edificios Públicos, y la Administración de Servicios Generales. **Es natural que surjan discrepancias en cuanto al monto o cuantía de las facturas por servicios[,] como por detalles específicos en dichas facturas, pero el retraso de los pagos en controversia afecta las operaciones y liquidez de las agencias de tipo corporativo así como las operaciones fiscales de las agencias concernientes.** (Énfasis nuestro.) Informe de la Comisión de Gobierno del Senado sobre el P. de la C. 1289 de 5 de mayo de 1980, págs. 1-2.

Como vemos, la Comisión fue concebida como un foro administrativo especializado para adjudicar de manera rápida cualquier controversia sobre pagos y deudas entre las agencias, corporaciones públicas o municipios involucrados en la prestación de servicios a otras agencias, con el fin de proteger las operaciones y la autonomía fiscal de éstas. *Véase Mun. de Arecibo v. Mun. de Quebradillas*, *supra*. Es decir, se creó un foro especializado con la flexibilidad, agilidad y economía que revisten los procedimientos administrativos, para así

evitar que estas agencias, corporaciones públicas o municipios se vean envueltos en un extenso y costoso trámite judicial. *Id.*

Para cumplir con este propósito, la Asamblea Legislativa dotó a la Comisión con el poder de requerir la presentación de libros, documentos o cualquier otra evidencia necesaria; requerir la presencia de testigos con el objetivo de interrogarlos bajo juramento; solicitar al tribunal de instancia cualquier orden judicial a esos efectos bajo apercibimiento de desacato; utilizar como recurso el personal diestro de cada una de las agencias que dirigen sus miembros, y formular y adoptar reglamentos destinados a dirigir sus procedimientos, con la aprobación del Gobernador. 3 L.P.R.A. sec. 1752.

Asimismo, la Asamblea Legislativa diseñó a grandes rasgos un esquema procesal para orientar el funcionamiento de la Comisión. 3 L.P.R.A. sec. 1753. Dispuso, de este modo, que el procedimiento investigativo fuera iniciado cuando una parte lo solicitara o *motu proprio*, cuando la Comisión considerara que se estaba lesionando la solvencia económica o los servicios esenciales prestados por las agencias concernidas. *Id.* Además, requirió que la evidencia pertinente a la controversia fuera presentada en una vista presidida por un examinador. *Id.* Este último sería responsable de levantar el expediente del caso y, luego de haber

escuchado a todas las partes y haber recibido la evidencia necesaria, someter a la Comisión un informe con sus recomendaciones. *Id.* Por último, la Comisión tendría la responsabilidad final de determinar el modo de pago y el monto de la cantidad, si éste fuera uno de los asuntos en controversia. *Id.*

Vista la política pública que inspiró la creación de la Comisión, así como las facultades, deberes y poderes que le fueron encomendados, nos resta por determinar si dicha entidad administrativa posee jurisdicción para entender sobre el caso ante nuestra consideración.

III

De entrada, es menester señalar que el Municipio no cuestiona que la Comisión posea jurisdicción sobre los municipios, corporaciones públicas u otras agencias gubernamentales. Su argumento se circunscribe a que, según la ley habilitadora de la Comisión, dicha entidad posee jurisdicción únicamente para resolver controversias entre agencias, corporaciones públicas o municipios sobre el modo de pago y el monto de la cantidad adeudada por servicios prestados. Según razona, el ejercicio de esta jurisdicción requiere como base que exista realmente una deuda entre agencias, corporaciones públicas o municipios. Sin embargo, aduce que cuando la existencia de la deuda está en controversia, le corresponde al foro judicial resolverla. No coincidimos con el razonamiento del Municipio.

La interpretación que el Municipio ha hecho de la ley orgánica de la Comisión ha dejado trunca la intención legislativa hasta el punto de convertir el estatuto en uno irracional. De ser cierta su posición respecto a la Comisión, sólo bastaría con que la agencia promovida alegue la inexistencia de la deuda para privar de jurisdicción a dicho organismo, impulsando de este modo la controversia al foro judicial. Así, quedaría inoperante, por exclusiva voluntad de una de las partes, todo el esquema diseñado por el legislador precisamente para evitar que este tipo de asunto sea sometido al trámite extenso y costos que conlleva el litigio ordinario.

Por si esto fuera poco, la Comisión únicamente tendría jurisdicción para entender sobre las controversias relativas a las cantidades en determinadas facturas, mas no sobre las demás facturas relativas a los alegados servicios no prestados. De esta forma, se bifurcaría la causa de acción de la agencia proveedora, la cual tendría que someter las primeras al proceso administrativo de la Comisión y las segundas al proceso judicial.[3] Entonces nos preguntamos ¿cómo se adelanta la intención del legislador de promover un foro rápido, especializado y conveniente para evitar que la falta de pago incida sobre las operaciones fiscales de la agencia,

---

[3] Nótese que en *Mun. de Arecibo v. Mun. de Quebradillas*, *supra*, resolvimos que la Comisión tiene jurisdicción primaria para entender en los asuntos que le fueron encomendados.

el municipio o la corporación pública, si al fin de cuentas estos últimos tienen que someterse al trámite judicial?

Recordemos que no podemos atribuirle a la Asamblea Legislativa actos fútiles o absurdos. *Talcott Inter-Amer. Corp. v. Registrador*, 104 D.P.R. 254 (1975). La Comisión no fue creada como un adorno administrativo que pueda ser utilizado a conveniencia. Su jurisdicción fue redactada en términos bastante amplios: "investigar **controversias entre agencias gubernamentales** sobre pagos y deudas entre dichas agencias". (Énfasis nuestro.) 3 L.P.R.A. sec. 1752. Sus facultades le revisten con el mismo poder de cualquier otro foro cuasi-judicial. Sus recursos son igualmente amplios como para atender más que un mero cálculo matemático.

La existencia o ausencia de la deuda entre agencias gubernamentales, municipios o corporaciones públicas no es más que otro incidente que puede ser investigado y adjudicado por la Comisión, como parte de sus encomiendas y propósitos. Precisamente este asunto es uno catalogado como una controversia entre agencias respecto a deudas.[4] Además, como ya hemos mencionamos, el Municipio y la Administración son "agencias" dentro del significado de la ley orgánica de la Comisión. Por ende, resulta forzoso

---

[4] En *Mun. de Arecibo v. Mun. de Quebradillas*, *supra*, la existencia de la deuda entre ambos municipios, en efecto, estaba en controversia, por lo que confirmamos al foro apelativo intermedio en cuanto a que este asunto fuera sometido en primera instancia ante la Comisión.

concluir que la Comisión tiene jurisdicción para determinar, en primer lugar, si existe la deuda entre el Municipio y la Administración, y de resolver afirmativamente, determinar el monto de la cantidad adeuda y el método de pago.

En vista de que la Comisión estaba facultada, en primera instancia, para dirimir un planteamiento sobre su propia jurisdicción, *Colón Ventura v. Méndez*, 130 D.P.R. 433 (1992), y dado que debemos deferencia a la interpretación que ésta haga sobre su ley habilitadora, *Martínez Segarra v. Rosado Santoni*, *supra*, confirmamos su determinación respecto a su jurisdicción sobre el caso. A su vez, sostenemos la sentencia aquí recurrida.

IV

Por los fundamentos que preceden, se confirma la sentencia del antiguo Tribunal de Circuito de Apelaciones. Se devuelve el caso a la Comisión para Resolver Controversias sobre Pagos y Deudas entre Agencias Gubernamentales para la continuación de los procedimientos de forma compatible con lo resuelto.

Se dictará Sentencia de conformidad.


                                        Federico Hernández Denton
                                        Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Administración de Servicios
Generales

    Recurrida

        v.                           CC-2003-837  Certiorari

Municipio de San Juan

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 30 de junio de 2006.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se confirma la sentencia del antiguo Tribunal de Circuito de Apelaciones. Se devuelve el caso a la Comisión para Resolver Controversias sobre Pagos y Deudas entre Agencias Gubernamentales para la continuación de los procedimientos de forma compatible con lo resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados señores Fuster Berlingeri y Rivera Pérez no intervinieron.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo